O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MARIA MALDONADO, | ) | Case No. CV 09-7703-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Maria Maldonado seeks judicial review of the Social Security Commissioner's denial of her application for Social Security Disability Insurance ("SSDI") benefits pursuant to Title II of the Social Security Act. For the reasons stated below, the decision of the Commissioner is affirmed.

I. **Facts and Procedural Background**

Plaintiff was born on November 24, 1956. She completed the ninth grade in Mexico and has worked as an assembler and janitor. (Administrative Record ("AR") at 52, 79, 99.) Plaintiff filed an

1

application for SSDI benefits[1] on March 19, 2007, alleging disability as of August 1, 1999, due to shoulder, lower back, arm, and knee impairments arising from a work-related injuries in 1995 and 1997.[2] (AR at 79.) Her application was denied initially and upon reconsideration. (AR at 67, 98.) An administrative hearing was held on July 7, 2008, before Administrative Law Judge ("ALJ") Robert J. Grossman. (AR at 47-65.) Plaintiff was represented by counsel and testified on her own behalf with the aid of an interpreter. A vocational expert ("VE"), Barbara Miksic, also testified at the hearing. (*Id.*)

ALJ Grossman issued an unfavorable decision on February 20, 2009. (AR at 21-28.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 1, 1999, to December 31, 2002, the date she was last insured. Plaintiff's severe impairments were found to include internal derangement of the knees and degenerative disc disease of the lumbar spine, but these impairments, alone or in combination, did not meet the requirements of a listed impairment found in 20

---

[1] Plaintiff states that she also applied for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act. (Joint Stip. at 2.) However, the record contains only a Title II SSDI application, and the ALJ issued an unfavorable decision solely on the issue of whether Plaintiff was disabled during the SSDI period. Although there is one reference to a pending SSI application in the record, (AR at 83), the remainder of the record reflects the existence of a standalone SSDI claim. (AR at 66-67, 72, 93-94, 109, 116, 196.) The Commissioner only reached a final decision as to Plaintiff's eligibility for SSDI benefits, and this Court's judicial review is limited to that decision. 42 U.S.C. § 405(g).

[2] Plaintiff received worker's compensation benefits in connection with these injuries from 1999 through early 2007.

C.F.R. Part 404, Subpart P, Appendix 1. (AR at 23-24.) The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work.[3] (AR at 24-27.) This RFC precluded Plaintiff from returning to her past relevant work. (AR at 27.) Nonetheless, the ALJ concluded that there existed work in the economy that Plaintiff could perform and that she was not disabled based upon Medical-Vocational Rule 202.16. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.

The Appeals Council denied review on August 25, 2009, (AR at 9), and Plaintiff commenced this action on October 23, 2009. Plaintiff contends that the ALJ erred by (1) finding that Plaintiff could perform light work; and (2) failing to properly evaluate Plaintiff's subjective testimony. (Joint Stip. at 7, 17.)

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept

---

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds...[A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

3

as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

### III. Discussion

#### A. The ALJ Properly Determined Plaintiff's RFC

Plaintiff claims that the ALJ erred in concluding that she retains the residual functional capacity to perform a full range of light work. Specifically, Plaintiff argues that the ALJ failed to "base his RFC determination on the entire record including [Plaintiff's] testimony and reports stemming from chiropractic treatment," and "failed to consider whether [Plaintiff] would be able to sustain work activity." (Joint Stip. at 11.) In support of this argument, Plaintiff chronicles the medical evidence from November, 2001, through the end of 2007, and argues that it "supports" a finding that she would not be able to sustain work activity. (*Id.*)

Plaintiff's insured status expired on December 31, 2002, and she bore the burden of establishing that she was disabled prior to that date. *Parra*, 481 F.32 at 746 (citing *Tidwell v. Apfel*, 161

F.3d 599, 601 (9th th Cir. 1998)); *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). Instead, Plaintiff was required to demonstrate that her impairments resulted in functional limitations severe enough to prevent her from engaging in any substantial gainful activity. *Id*. For the reasons stated below, the ALJ's determination that Plaintiff had not met this burden was supported by substantial evidence in the record.

The ALJ noted both at the hearing and in his written decision that the majority of Plaintiff's medical records are dated after December 31, 2002, the date she was last insured. (AR at 25, 58-64.) The ALJ provided Plaintiff with 60 days after the hearing to supplement the record to remedy the deficiency. (AR at 64.) Although Plaintiff did submit additional records, the earliest of those medical records is dated October 30, 2001, more than two years after her alleged onset date. In his unfavorable decision, the ALJ surveyed the available medical records for the time period during and up to six months after Plaintiff's insurance status expired, including records from two orthopaedists, Drs. Missirian and Angerman, and her chiropractor, Steve Settlage. (AR at 25.) Each of these medical sources treated or examined Plaintiff in connection with her worker's compensation claim.

Between October 2001 and October 2003 Dr. Missirian evaluated Plaintiff for lumbar spine and knee injuries at the request of her treating chiropractor. (AR at 440-507.) Dr. Missirian noted a history of right and left arthroscopic knee surgeries and diagnosed internal knee derangement, ligament tears in both knees,

5

and lumbar spine musculoligamentous injury with disc protrusion. (*See* AR at 483, 497-98, 505.) He performed arthroscopic surgery on Plaintiff's left knee and epidural steroid injections to the lumbar spine. Plaintiff was undergoing concurrent physical therapy throughout this period with her chiropractor and taking medication to alleviate pain. During the relevant time period, Plaintiff reported slight to moderate pain in her knees and back, which were aggravated by bending, stooping, squatting, prolonged walking, and cold weather. She reported that her symptoms were alleviated with pain medication. (AR at 468-507.) During Plaintiff's first visit on October 30, 2001, Dr. Missirian concluded that Plaintiff's "work status" was temporarily totally disabled under California's worker's compensation standards. In the remainder of the evaluations during the period of disability, Dr. Missirian deferred to chiropractor Steve Settlage's work status evaluation. (*Id.*)

Steve Settlage, D.C., began treating Plaintiff in connection with the worker's compensation claim on September 14, 2001. (AR at 439.) Although he opined that Plaintiff was temporarily totally disabled under California worker's compensation rules through Plaintiff's last insured date, (AR at 371), that conclusion is not determinative of an entitlement to benefits under social security law. *See Booth v. Barnhart*, 181 F.Supp.2d 1099, 1104-05 (C.D. Cal. 2002) (citing *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996)) and *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988)); 20 C.F.R. § 404.1504. The determination that Plaintiff was temporarily totally disabled under state worker's compensation rules indicated that she could not return to her previous job as an assembler, not that she was precluded from

6

all substantial gainful activity. Aside from the conclusion that Plaintiff should not return to her previous job as an assembler, Settlage did not provide specific functional limitations caused by Plaintiff's impairments that would preclude work.[4]

Dr. Angerman examined and evaluated Plaintiff several times as a neutral "Orthopaedic Agreed Medical Examiner" in her worker's compensation case. (*See* AR at 166-67, 360-66.) Dr. Angerman first examined Plaintiff in 2001. On March 3, 2003, he performed a full orthopaedic examination and took x-rays of Plaintiff's knees and spine. On June 26, 2003, after receiving copies of Plaintiff's medical records to supplement his own examination, Dr. Angerman concluded that Plaintiff's physical impairments limited her to light work. (AR at 122-37, 166-67.) Dr. Angerman's conclusion conflicted with Dr. Missirian's March 4, 2003, opinion that Plaintiff was restricted to sedentary work. (AR at 474.) Because both of these opinions were based on independent clinical testing and examination, it was solely the province of the ALJ to resolve the conflict between Drs. Missirian and Angerman. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ resolved the conflict in favor of Dr. Angerman's opinion because he was a neutral agreed upon medical examiner. (AR at 25-26.) This was not error.

//

---

[4] The Court also notes in passing that the opinions of chiropractors are entitled to less weight than a physician's because they are not an "acceptable medical source" under the regulations. 20 C.F.R. § 404.1513(a), *Helmke v. Astrue*, 2010 WL 997105, *1 (9th Cir. 2010).

7

**B.     The ALJ Properly Evaluated Plaintiff's Credibility**

Plaintiff claims that the ALJ failed to properly evaluate her subjective complaints. (Joint Stip. at 17.) At the hearing, Plaintiff testified that her injuries prevent her from bending, and that she cannot stand or sit for more than five to ten minutes at a time. She testified that she lies down approximately 20 times per day. (AR at 54-55.)

The determination of credibility and the resolution of conflicts in the testimony are functions of the ALJ acting on behalf of the Commissioner. *Morgan v. Commissioner of Social Security*, 169 F.3d 595, 599(9th Cir. 1999). In general, an ALJ's assessment of credibility should be given great weight. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). However, once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence. *Lingenfelter*, 504 F.3d at 1035-36; *Reddick*, 157 F.3d at 722; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "'[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

Here, the ALJ concluded that Plaintiff's medical impairments could be expected to produce some of the alleged symptoms, but that her testimony that she was completely disabled was not credible because it was not supported by the medical record. (AR at 25.) The

ALJ placed "great weight" on Dr. Angerman's opinion that Plaintiff could perform light work despite her impairments, an opinion that was offered after a full examination of Plaintiff and a review of Plaintiff's reporting of symptoms. (AR at 26-27.) In essence, the ALJ found that the symptoms reported by Plaintiff at the hearing were inconsistent with the symptoms contained in the medical records prior to the date she was last insured. This finding is supported by substantial evidence in the record.

Dr. Missirian's treatment notes during the relevant time period detail her subjective complaints. (AR at 478-507.) It is worth noting that the pain she described at the hearing related to current symptoms, while the medical records detail her subjective complaints of pain specific to the period of time prior to the expiration of her insured status. On October 30, 2001, Plaintiff complained of constant slight to moderate lower back pain that was aggravated by stooping and bending. She also complained of slight to moderate pain in her right knee and intermittent aching pain in her left knee, both of which were aggravated by cold weather and alleviated by medication. (AR at 500-01.) Plaintiff's reporting of symptoms to her physicians did not change significantly through December 31, 2002, the date she was last insured. (AR at 479, 483-84, 487-88.) Plaintiff's recitation at the hearing was not supported by the contemporaneous records detailing her symptoms during the relevant time period, and the ALJ did not err in rejecting her testimony on that basis. *Morgan*, 169 F.3d at 599-600 (affirming adverse credibility finding based on conflict between symptom testimony and evidence of symptoms in the medical record). Moreover, Plaintiff's testimony about her symptoms conflicted with

the record of conservative care during the relevant time period. *See Parra*, 481 F.3d at 751; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008). For these reasons, the ALJ's credibility determination was not based on legal error and was supported by substantial evidence in the record.

**IV. Conclusion**

For the foregoing reasons, the decision of the Commissioner is affirmed.

Dated: June 17, 2010

MARC L. GOLDMAN
---
Marc L. Goldman
United States Magistrate Judge

10